**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STARSTONE INSURANCE SE, | ) | |
| | ) | Case No. 20 CV 2475 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John Robert Blakey |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is an insurance dispute concerning Plaintiff and Counterclaim-Defendant Starstone Insurance's coverage obligations under a "wrongful acts" policy it sold to the Defendant and Counterclaim-Plaintiff, the City of Chicago ("the City"). The parties dispute whether Starstone has an obligation to pay part of the City's settlement in a civil rights action brought against the City and its police officers. Starstone filed a complaint seeking a declaratory judgment stating that it has "no obligation to fund any portion of the City's settlement. . . ." [1] at ¶ 24. The City then brought a two-count counterclaim against Starstone, alleging breach of contract and violation of section 155 of the Illinois Insurance Code. [22] at 11–14. Starstone moves to dismiss the City's Illinois Insurance Code claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [25]. For the reasons stated below, this Court grants Starstone's motion.

I.      The Counterclaim's Allegations

Jacques Rivera was convicted of murder in 1990. [22] at ¶ 6. Upon his release in 2011, Rivera sued the City and multiple Chicago police officers for civil rights violations under 42 U.S.C. § 1983. *Id.* at ¶ 7. After a trial, a jury awarded Rivera $17 million in compensatory damages against the City and some of the officers, and $175,000 in punitive damages against certain officers; additionally, because Rivera prevailed, the trial court had the discretion to award him reasonable attorneys' fees. *Id.* The City appealed, and the case went to mediation in the Seventh Circuit. *Id.* at ¶ 8. Ultimately, the parties settled Rivera's lawsuit for $18,750,000. *Id.* at ¶ 9.

Starstone issued an excess liability insurance policy to the City covering the period from December 31, 2010 to December 31, 2011. *Id.* at ¶ 10. The policy provided $5,000,000 in indemnification coverage excess of the City's $15,000,000 retained limit. *Id.* Consistent (in its view) with this policy, the City informed Starstone that it would pay its retained limit of $15,000,000 and requested that Starstone pay the additional $3,750,000. *Id.* at ¶ 12. Starstone agreed to pay, but only if the City agreed to provide Starstone with a right of recoupment. *Id.* The City refused, claiming the policy did not expressly allow Starstone to condition payment on such a right. *Id.*

With the parties at an impasse, Starstone sued, seeking a declaratory judgment that it had "no obligation to fund any portion of the City's settlement. . . ." [1] at ¶ 24. The City answered the complaint and brought a two-count counterclaim against Starstone. [22] at 11–14. Count I alleges that Starstone's refusal to pay

$3,750,000 towards the Rivera settlement constitutes a breach of contract. *Id.* at 11–12. Count II alleges that Starstone's conduct violates section 155 of the Illinois Insurance Code, 215 ILCS 5/155. *Id.* at 12–14. In particular, the City alleges that Starstone's failure and refusal to pay $3,750,000 toward the Rivera Settlement was "vexatious and unreasonable" because Starstone "had no reasonable basis in law or fact to deny the City's request for payment." *Id.* at ¶ 24. The City also alleges that Starstone's attempt to condition its payment on receipt of an agreement from the City to provide a right to recoupment was vexatious and unreasonable because it imposed an extra-contractual term on the City in exchange for paying what the policy obliged Starstone to pay. *Id.* at ¶ 25.

Starstone moves to dismiss count II. [25].

II.    Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A counterclaim is subject to the same legal standard as a complaint. *See Cozzi Iron & Metal Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Thus, in deciding the motion, this Court must construe the counterclaim in the light most favorable to the pleading party, accept as true all well-pleaded facts, and draw reasonable inferences in the pleading party's favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). The Court need not, however, accept statements of law. *Id.*

To survive a motion to dismiss, the pleading must contain "sufficient factual matter" to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where the plaintiff alleges sufficient facts for "the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Id.*

III.    Analysis

Starstone argues that this Court should dismiss the City's section 155 claim because the City's allegations demonstrate a bona fide dispute concerning the policy. [25] ¶ 4. The City responds that the question of whether there is a bona fide coverage dispute is not the relevant issue at the motion to dismiss stage. [30] at 7–8. Rather, the City met the pleading standard, it argues, by setting forth the factual basis for the loss, laying out the relevant policy language, and alleging that Starstone baselessly denied coverage. *Id.*

Section 155 of the Illinois Insurance Code provides "an extracontractual remedy to policy-holders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013) (quoting *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996)). Courts consider the totality of the circumstances when determining if conduct merits section 155 sanctions. *TKK USA, Inc. v. Safety Nat'l Cas. Corp.*, 727 F.3d 782, 793 (7th Cir. 2013) (citing *Statewide Ins. Co. v. Houston Gen. Ins. Co.*, 920 N.E.2d 611, 624 (Ill. App. 2009)). Sanctions under section 155 require "evidence . . . that the insurer's behavior was willful and without reasonable

cause." *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). "[A]n insurer's conduct is not vexatious and unreasonable if: (1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Id.* (internal citations omitted).

The City alleges that Starstone unreasonably and vexatiously conditioned its payment of the $3,750,000 insurance claim on the City agreeing to an extracontractual demand. [22] at 13, ¶ 25. But even viewed in the light most favorable to the City, the City's allegations fail to raise a facially plausible section 155 claim. The existence of a bona fide dispute between the parties about the insurance policy's scope and application, and about Starstone's ability to condition its payment on potential recoupment, undermines the City's claim that Starstone's behavior was vexatious and unreasonable.

Based upon the language of the parties' contract, this Court does not find Starstone's position unreasonable. The policy obligates Starstone to pay "the ultimate net loss, in excess of the retained limit, that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury or property damage arising out of an occurrence during the Policy Period." [22-2] at 6. The policy provides that the "defense of any claim or suit to which this Policy applies is [the City's] obligation" and requires the City to "pay all costs of claim or suit investigation, litigation, and legal expenses

which can be directly allocated to a specific claim or suit." *Id.* at 7. The policy absolves Starstone of any obligation "to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against [the City]." *Id.* Based upon these provisions, Starstone acted neither unreasonably nor vexatiously in attempting to avoid paying attorneys' fees and costs.

Nor does Starstone's attempt to condition payment on a right to recoup constitute vexatious or unreasonable conduct. An insurer does not act vexatiously or unreasonably where it "takes a reasonable legal position on an unsettled issue of law." *Citizens First Nat'l Bank*, 200 F.3d at 1110 (internal citations omitted). Whether insurers may condition indemnification on a right to recoup remains an open legal question. Although the City's argument that Starstone may not invoke a right to recoup might hold sway had Starstone conditioned a *defense* on a right to recoup, the argument fails as to indemnification. Illinois law unequivocally prohibits insurers from claiming an extracontractual right to recoup defense costs, even if the insurer pays under a reservation of rights and a court later determines that no defense was owed. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1104 (Ill. 2005). In *General Agents*, the Illinois Supreme Court reasoned that allowing the insurer to reserve the right to recoup defense costs would leave the insured with a Hobson's choice between accepting the insurer's condition or losing its right to a defense. *Gen. Agents*, 828 N.E.2d at 1102. Thus, Insurance companies may recoup defense costs only if the policy language explicitly provides for that right. *Id.* But that rule does not apply in the indemnification context. "Once

the insured has incurred liability as a result of the underlying claim, an insurer's duty to indemnify arises only if 'the insured's activity and the resulting loss or damage *actually* fall within the . . . policy's coverage.'" *Allied Prop. & Cas. Ins. Co.*, 850 F.3d at 847 (quoting *Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 492 (Ill. 2001)). Although an insurer presents the choice between accepting the insurer's condition or losing its right to immediate indemnification, the insured does not effectively waive its right to indemnification altogether if it declines the insurer's condition. Rather, declining the condition simply delays payment pending clarification on the policy language and applicable law. Moreover, the Illinois Supreme Court opined that insurers cannot reserve the right to recoup defense costs because, by defending the underlying action, the insurer is actually protecting itself from a future adverse judgment. *Gen. Agents*, 828 N.E.2d at 1103. In contrast, indemnification totals are final at the time of the claim, so the insurer derives no monetary benefit from paying the claim while reserving a right to recoupment. Conditioning indemnification on a right to recoup is neither contrary to settled law, nor unreasonable. Thus, the City's claim that Starstone violated section 155 by conditioning indemnification on recoupment fails.

Moreover, under Illinois law, an insurer's decision to deny coverage is not vexatious and unreasonable if the challenged conduct arises from a bona fide dispute concerning a policy's scope or coverage. *Citizens First Nat'l Bank*, 200 F.3d at 1110 (internal citations omitted). Although the City does not plead the existence of a genuine dispute between the parties concerning the insurance contract, reading the

pleadings together with the insurance contract itself, which the City attached to its answer and counterclaim, demonstrates such a dispute. As the City correctly notes, this Court may not decide the merits of the parties' dispute at this stage; but the City must nonetheless present sufficient facts for this Court to plausibly conclude that Starstone's conduct did not stem from a bona fide dispute. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). And it has failed to plead such facts.

In fact, as the complaint and counterclaim make clear, there exists a bona fide dispute between the parties as to whether Starstone may determine coverage by apportioning the Rivera Settlement between covered liabilities and non-covered costs. *Compare* [1] at ¶ 21 *with* [22] at ¶¶ 24–25. Starstone contends that the Rivera Settlement included $5,600,000 in attorney's fees, an uncovered expense category under the insurance policy. [1] at ¶ 21–22; *see* [22-2] at § 5, ¶ W. Once the City subtracts the attorney's fees from the total settlement, the remaining coverable settlement falls within the City's retained limit. [1] at ¶¶ 21–22. The City's allegations are silent on the nature of the Rivera Settlement, and implicitly dispute that the policy allows any apportionment between "the ultimate net loss" (covered) and the "costs of claim or suit investigation, litigation, and legal expenses which can be directly allocated to a specific claim or suit" (uncovered). [22] at ¶¶ 14–17, 24–25. But based upon the plain language of the policy (attached to the counterclaim) an argument in favor of such apportionment is not unreasonable (whether or not it ultimately proves successful).

Based upon the parties' bona fide policy interpretation dispute, and because the right to recoup is not precluded in the indemnification context, the City cannot plausibly allege that Starstone's behavior was vexatious and unreasonable, as required to win on its section 155 claim. Accordingly, the Court grants Starstone's motion to dismiss this claim.

## IV. Conclusion

For the reasons explained above, this Court grants Starstone's motion [25] and dismisses count II of the City's counterclaim for failure to state a claim.

Dated:  March 22, 2020                                    Entered:


John Robert Blakey
United States District Judge