IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Starstone Insurance SE<br>f/k/a Torus Insurance (UK) Ltd. | )<br>)<br>)<br>)<br>) | |
| Plaintiff, | ) | Case No. 1:20-cv-02475 |
| v. | )<br>)<br>) | |
| The City of Chicago | )<br>)<br>)<br>) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY MEMORANDUM**
<u>**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**</u>

In its opposition to Starstone's Motion for Summary Judgment (ECF 67-69) (the "City's Opposition"), the City continues its misplaced, myopic focus on a single Policy definition without acknowledging what that definition actually says or the myriad other Policy provisions that make clear there is no coverage for any litigation costs, including § 1988(b) and § 1920 costs. Indeed, **the City fails to cite a single case** that holds that statutory taxable costs are covered by a policy that (i) specifically limits its scope to amounts paid to "compensate others for loss," and (ii) expressly excludes coverage for any form of relief "other than monetary damages." As explained below, Starstone's position that there is no coverage for § 1988(b) and § 1920 costs is correct, both as a matter of the plain language of the Policy and Illinois law.

1

### I. The Policy's Definition of "Ultimate Net Loss" Does Not Alter the Lack of Coverage for Taxable "Costs."

The City places nearly all of its Opposition eggs in one argument basket. It contends that when read by itself, the Policy's definition of "Ultimate Net Loss" mandates "broad coverage" for all sums "actually paid," regardless of why those sums are paid. (ECF 76 at 2). But as the City repeatedly acknowledges, this definition **must be read alongside the entire Policy**, including the insuring agreement, i.e., the provision that incorporates the Ultimate Net Loss definition into the Policy. *See Rich v. Principal Life Ins. Co.*, 226 Ill. 2d 359, 371 (2007) ("an insurance policy is to be construed as a whole, giving effect to every provision").

When the definition (shown in the bracketed italics below) is inserted into the insuring agreement, the result is as follows:

> We shall pay you, or on your behalf, the **[***sum actually paid or payable due to a claim or suit for which you are liable either by a settlement to which you and we agreed or a final judgment***]**, in excess of the retained limit, that the insured becomes legally obligated to pay **to compensate others for loss** arising out of your wrongful act that takes place during the Policy Period and arises solely in performing or failing to perform duties of the public entity.

*See* ECF 69-2 at Sec. I.A.2, as modified by Sec. II.EE (emphasis added).[1] As is immediately apparent from the passage above, insertion of the Ultimate Net Loss definition does nothing to change the insuring agreement's **separate and additional** requirement that coverage can apply only to amounts the City becomes legally obligated to pay to "compensate others for loss."

The law is clear that § 1988(b) and § 1920 costs **do not compensate anyone for loss**; they are a special, statutory award to plaintiff's counsel for taking on a meritorious civil rights claim. *See Custom v. Quern*, 482 F. Supp. 1000, 1005 (N.D. Ill. 1980) (Section 1988 "was

---

[1] While the Policy's insuring agreement is modified in this case by Endorsement 8, for purposes of the parties' cross-motions for summary judgment, that modification is immaterial. To avoid confusion, Starstone refers to the insuring agreement cited by the City in its Opposition to Starstone's Motion for Summary Judgment. *See* ECF 76 at 2-3.

designed to promote vigorous enforcement of the civil rights laws. An award of fees which allows private attorney to earn a profit is necessary to accomplish this end."); *Lucas v. Guyton*, 901 F. Supp. 1047, 1055 (D.S.C. 1995) (citing *Farrar v. Hobby*, 506 U.S. 103, 122 (1992) (O'Connor, J., concurring)) ("The purpose for awarding attorney's fees under 42 U.S.C. § 1988 is to provide an incentive for competent and skilled attorneys to take on unpopular cases and indigent clients thereby acting as a 'private attorney general.'"). *See also Littlefield v. McGuffey*, 979 F.2d 101, 104 (7th Cir. 1992) (Illinois law) ("Costs can include attorney's fees and expenses if a statute provides for it …. Section 1988 is one such statute ....") (citations omitted); *Sullivan Cty., Tenn. v. Home Indem. Co.*, 925 F.2d 152, 153 (6th Cir. 1991) (quoting *Oates v. Oates*, 866 F.2d 203, 207 (6th Cir., *cert. denied*, 490 U.S. 1109 (1989)) ("Congress expressed an unambiguous intent in 42 U.S.C. § 1988 to award attorney's fees 'as part of costs'; i.e., as an additional component of the traditional costs taxed by the court pursuant to 28 U.S.C. § 1920," and not as damages); *School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 378 (1992) (defining "damages" as "legal compensation for past wrongs or injuries," and concluding that attorneys' fees awarded under § 1988 "do not constitute 'damages'"); *Board of Cty. Comm'rs of Larimer Cty. in State of Colo. v. Guarantee Ins. Co.*, 90 F.R.D. 405, 407 (D. Colo. 1981) ("The attorney's fees awarded to … plaintiffs [under § 1988] and costs assessed against the county are not damages as contemplated by the policy definition or as understood by the term's ordinary customary meaning in civil rights actions.").

The City also suggests that Starstone seeks to somehow narrow the Policy's coverage grant by citing cases that speak in terms of the word "damages," and not "loss." (ECF 76 at 3-4). This is a manufactured distinction without a legal difference. **The City does not dispute that under Illinois law, "damages"** <u>**are**</u> **"compensation for loss."** *See Gen. Star. Indem. Co. v. Lake*

3

*Bluff School Dist. No. 65.*, 354 Ill. App. 3d 118, 127 (2004) (holding that "damages" are "compensation" for "wrong[s] or injury"); *In re Consol. Objections to Tax Levies of Sch. Dist. No. 205*, 193 Ill. 2d 490, 497 (2000) ("'compensatory damages' is a monetary award paid to a person as compensation for loss or injury"). The use of the phrase "to compensate others for loss" serves exactly the same purpose in the Policy as the use of the phrase "pay as damages" in the cases cited by Starstone. *See Sch. Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 370 (1992) ("The addition of 'as damages' serves as a qualifier, a limit to coverage.").

The equivalence of "damages" with compensation "to others for loss" is made perfectly clear by *Gen. Star. Indem. Co.* In that case, the insurance policy provided "broad, general coverage, subject to a number of requirements and exclusions," including the requirement "that the suit be for 'damages,' a word that the policy [did] not define." 354 Ill. App. at 127. Looking for the "plain, ordinary, and popular meaning," the Illinois appellate court turned to Webster's Dictionary, which defined "damages" as "the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right.'" *Id*. The court also noted that "Black's Law Dictionary defines 'damages' as '[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury.'" *Id*. The court observed that these "definitions of 'damages' are consistent with … compensating a party for a loss caused by a violation of a legal right …." *Id*. at 127-28.

In other words, under Illinois law, "damages" **means** "compensating a party for a loss," a phrase identical to the scope of Starstone's coverage, which limits its insurance to the City's legal obligation to pay to "compensate others for loss." Accordingly, there is no basis to find that any of Starstone's cases are distinguishable, no grounds to suggest that Starstone should have used "other" policy language, and no need to "rewrite" the Policy.

4

### II. The Policy's Other Provisions Reinforce that There is Coverage Only for "Damages."

Numerous provisions support what is already apparent from the Policy's insuring agreement—that coverage under the Policy is only available for "damages," i.e., to "compensate others for loss," and thus not for taxable "costs." In one stark example, the Policy's limits of liability provision confirms that Starstone will "be liable only for that portion of **damages** in excess of your retained limit up to our Limits of Insurance." *See* Policy Sec. III.C (emphasis added). This passage makes plain that Starstone cannot be liable for anything other than "damages."

Violating its own rules of construction, the City simply seeks to read this provision out of the Policy. The City first makes the absurd assertion, without any legal support (ECF 76 at 5), that the Policy's detailed limits of liability provision has "nothing to do with the nature or scope of coverage." This bald statement not only contradicts the Policy language itself, it is pure legal fiction. Illinois caselaw reflects that limits of liability are an integral part of the coverage afforded by an insurance policy and dictate what the policy covers and how the policy works. *See, e.g.*, *McKinney v. Allstate Ins. Co.*, 188 Ill. 2d 493, 498 (1999) (policy's limits of liability clause made clear that coverage was limited to $100,000 per "injured" person rather than $100,000 per "insured" person); *Ware v. First Spec. Ins. Corp.*, 2013 IL App (1st) 113340, at ¶ 21 (policy's limits of liability section confined coverage for 13 deaths to $1 million because all losses arose out of a single "occurrence"); *Board of Trustees of Univ. of Ill. v. Ins. Co. of Ireland, Ltd.*, 750 F. Supp. 1375, 1385 (N.D. Ill. 1990) (policy's $5 million aggregate limits of liability applied to each calendar year the policy was in effect); *St. Katherine Ins. Co. Ltd. v. Ins. Co. of N. Am., Inc.*, 11 F.3d 707, 710 (7th Cir. 1993) (observing that whether excess policies were implicated by a loss depended on whether that loss was categorized as within the "completed

5

operations hazard" subject to aggregate limits, or outside that hazard and thus subject to multiple "per occurrence" limits of liability).

The City also tries to misrepresent Starstone's Limits of Liability argument. It says that Starstone is trying to "insert" the Limits of Liability provision, including its "damages" limitation, "into the insuring agreement." (ECF 76 at 4). Contrary to the City's accusation, however, Starstone does not seek to "insert" anything, because there is no need to do so. The insuring agreement already limits coverage to amounts the insured is legally obligated to pay "to compensate others for loss," i.e., "damages" under Illinois law. The Limits of Liability section simply reiterates that any covered payments are limited to such "damages."

The City then attempts to undermine the "damages" sentence in the Limits of Liability section by speculating about the other two sentences. Engaging in classic (and supposedly forbidden) "cherry picking," the City argues that because the second sentence says that the retained limit cannot be eroded by "defense costs," it must somehow mean that Starstone has obligated itself to pay § 1988(b) and § 1920 costs. (ECF 76 at 5-6).

The City is grasping at straws. In three separate sentences, the Limits of Liability section makes three separate points: (i) the City must demonstrate "complete expenditure of [the City's] retained limit by means of payments for judgments or settlements;" (ii) the City may not exhaust the retained limit "by defense costs nor your office expenses, employees' salaries, or expenses of any claims servicing organization that you have engaged;" and (iii) upon exhaustion of the retained limit, Starstone "will then be liable only for that portion of damages in excess of your retained limit up to our Limits of Insurance." *See* Policy Sec. III.C. The third sentence of the Limits of Liability section makes clear that if and when the City exhausts its retained limit,

Starstone will "be liable only for that portion of damages in excess of [the City's] retained limit up to our Limits of Insurance."

The third sentence is **unequivocal**. It expressly employs the word "damages," i.e., the precise term the City says is somehow missing from the Policy. The City cannot simply wish this sentence away by reference to the non-controversial fact that the City is obligated by the Policy to defend itself and to pay **all** litigation costs, including defense costs. *See* Policy, Sec. I.B.1 (requiring City to pay "*all costs* of claim or suit investigation, litigation, and legal expense") (emphasis added).

Finally, and tellingly, the City further abandons its "policy as a whole/no surplusage" rules by ignoring the myriad other Policy provisions that demonstrate a clear intent to limit coverage to "damages," and to exclude "costs." *See, e.g.*, Policy at Sec. I.B.1 (requiring the City to pay "*all costs* of claim or suit investigation, litigation, and legal expense") (emphasis added); Sec. III.E. (per Occurrence and per Wrongful Act limits are "the most [Starstone] will pay for the sum of all *damages* because of bodily injury or property damage arising out of a single occurrence or all *losses* arising out of a single wrongful act") (emphasis added); Sec. III.G.2 (Aggregate Limits are "the most [Starstone] will pay for the total of all *damages* . . . for all *losses* arising out of all wrongful acts") (emphasis added). Again, Illinois law forbids the City's effort to simply read these provisions out of the Policy and/or make them useless surplusage. *Rich*, 226 Ill. at 371.[2]

### III. The Policy's Exclusion of Any Form of Relief "Other Than Monetary Damages" Is not Limited to the City's Self-Defined "Traditional" Equitable Relief.

---

[2] This Court relied on all of these policy provisions in its motion to dismiss ruling, wherein this Court concluded that Starstone's position was not unreasonable (ECF 44 at 6). The City's effort (ECF 76 at 6 n.1) to simply write off the significance of that ruling, and the myriad policy provisions that supported it, speaks volumes.

Policy Exclusion BB provides that Starstone "will not … pay under this Policy for claims or suits against you … [f]or injunctions, equitable relief, or any other form of relief other than monetary damages." *See* ECF 69-2. This exclusion unambiguously precludes coverage for all requests for relief, in whatever "form" made, other than requests for "monetary damages."

### A. The Burden of Proof

Despite the clarity of this exclusion, the City argues (ECF 76 at 6) that Starstone cannot prevail because it has the burden to prove that Exclusion BB applies here. This argument is pure distraction. While Starstone has the burden to prove the applicability of exclusions, the parties have stipulated that all of the Policy's terms are clear and unambiguous; thus, Starstone bears no burden on that front. *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 308 (7th Cir. 2021) (citing *Thounsavath v. State Farm Mut. Auto. Indem. Ins. Co.*, 423 Ill. Dec. 150, 155 (Ill. 2018) ("If the policy is unambiguous, its terms must be applied as written.")). Moreover, the City does not contest the undisputed fact that makes the exclusion operative, i.e., there is no debate that the amounts for which the City seeks coverage are taxable "costs," **not** "monetary damages." (ECF 77 ¶¶ 18, 35). This stipulation makes perfect sense given that the categorization is mandated by U.S. and Illinois Supreme Court precedent. *Hutto v. Finney*, 437 U.S. 678, 695-96 (1978); *Yang v. City of Chicago*, 195 Ill. 2d 96, 108 (2001).

Contrary to the City's suggestion, however, Starstone's position is not based solely on Exclusion BB. As discussed above, there are numerous provisions **that are not exclusions**—from the insuring agreement on down—that affirmatively require the City to establish the existence of covered "damages," not "costs." As the City well knows, while it is the insurer's obligation to prove application of an exclusion, it is the policyholder who must prove that its claim falls within coverage—a burden the City cannot carry based on the clear Policy language

at issue here. *Wells v. State Farm Fire & Cas. Ins. Co.*, 2021 IL App. (5th) 190460, ¶ 25 (2021) (citing *Addison Ins. Co. v. Fay*, 232 Ill. 2d 446, 453 (2009)).

### B. "Traditional" versus "Non-Traditional" Equitable Relief

The City next asks this Court (ECF 76 at 7) to adopt a breathtakingly grand and novel proposition: that "Illinois courts recognize that the purpose" of this exclusion "is to preclude coverage for claims or suits for traditional equitable (nonmonetary) relief such as injunctions, as opposed to claims or suits for legal (monetary) relief." The four cases cited by the City do not, however, contain this sweeping statement, or anything like it.

In fact, two of the cases, *Ladd Const. Co. v. Insurance Co. of North America*, 73 Ill.App.3d 43 (1979), nor *Board of Educ., Community Unit School Dist. No. 207-U v. Country Mut. Ins. Co.*, 121 Ill.App.3d 124 (1984), do not deal with an exclusion at all. *Ladd* concerned an insuring agreement limiting coverage to payment of "damages," and the court rightly found that a suit seeking only a mandatory injunction did not fit that definition. 73 Ill. App. 3d at 48. But the court made no pronouncements whatsoever concerning the types of relief that might fit the exclusion at issue here. Similarly, in *Board of Educ.,* the court found no coverage because the policy covered only civil rights or constitutional rights claims, or personal injury or property damage claims in which "damages" are sought. 121 Ill. App. 3d at 126-27. The court noted that "the relief sought in the … complaint was a writ of mandamus to order the School District to reinstate [plaintiff], an injunction against the School District to prevent them from hiring someone to replace [plaintiff], and punitive and exemplary damages," which were excluded by the policy. *Id.*, at 126. As the court put it, "[n]o where in the complaint did plaintiff … ask for compensatory damages." *Id.* Like the *Ladd* court, the *Board of Educ.* court made no statements at all about "traditional" versus "non-traditional" equitable relief.

9

In the third case, *General Star Indemn. Co.,* the insured school district was sued by the family of a special education student. The family sought (1) reversal of an order placing the student in a special education program, (2) reimbursement for the cost of evaluations and clinicians, and (3) attorneys' fees and costs. 354 Ill. App. 3d at 120. The school district's insurance policy obligated the insurer to defend "any CLAIM against the INSURED seeking *damages* to which this insurance applies," but it excluded:

> Claims, demands or actions seeking relief or redress in any form other than monetary damages, or for any costs, fees, including attorney's fees, or expenses which the INSURED shall be legally obligated to pay as a result of any adverse judgment for injunctive or declaratory relief. However, the Company will afford defense to the INSURED for such CLAIMS as provided in [the policy].

*Id.*, at 120-21 (emphasis in original). The trial court found that the insurer had a duty to defend. On appeal the insurer argued in part that the underlying claim did not seek "damages" within the meaning of the policy, and thus there was no duty to defend.

Applying the common meaning of damages as "compensation for loss or injury," *id.*, at 127 (citing Black's Law Dictionary 393 (7th Ed. 1999)), the appellate court found that the family's request for monetary "reimbursement" of expenses they had paid for evaluations and clinicians constituted a claim for "damages," because "compensating a party for a loss caused by a violation of a legal right is similar to belatedly paying for expenses that a party had a legal right to in the first place." *Id.*, at 127-28. Thus, the court held that the "claims at issue seek relief through monetary damages, and the insurance policy exclusion for actions seeking 'relief other than monetary damages . . .' does not apply." *Id.*, at 128.

Here, by contrast, the § 1988(b) and § 1920 costs for which the City seeks coverage are not requests for reimbursement by Mr. Rivera, who has and had no legal right to have the City pay his attorneys' fees or legal expenses. These statutory fees and expenses are awarded by the

10

court as taxable court **costs** at the discretion of the trial court. *See* 42 U.S.C. § 1998(b) ("the court, in its discretion, may allow . . . a reasonable attorney's fee); 28 U.S.C. § 1920 ("A judge or clerk of any court of the United State may tax as costs the following . . ."). *General Star Indemn. Co.* does not change this fact, nor does it state in any form or fashion that the exclusion at issue there or here applies only to "traditional" equitable relief.

Finally, in *Hatfield v. 96-100 Prince St., Inc.*, 1997 WL 151502 (S.D.N.Y., Apr. 1, 1997), a federal district court in New York issued an unreported opinion involving a co-op lease dispute. After being sued for money damages relating to a breach of the lease contract, as well as being sued separately for an injunction to enforce the results of a co-op election, the property owner sought insurance coverage for all past and future attorney's fees necessary to **defend** the cases. 1997 WL 151502, at *1. Unlike the Starstone Policy, the policy at issue in *Hatfield* had a duty to defend all covered claims. It also excluded "claims, demands or actions seeking relief, or redress, in any form other than money damages," as well as claims for "fees or expenses relating to claims, demands or actions seeking relief, redress, in any form other than money damages." *Id*., at 2.

Reviewing these policy provisions and applying them to the facts, the court easily (and rightly) found that the exclusion did not apply to the compensatory damages and defense fees sought in the breach of contract case, because that case "was an action for damages." *Id*. The court also found (again, easily and rightly) that the "election case was an action for equitable relief, and accompanying attorneys' fees. Accordingly, [the insurer] had no duty to defend in that case," nor any duty to or reimburse defense fees. *Id*. The case had nothing to do with fees taxed as "costs." Moreover, as with the other cases cited by the City and discussed above, the court said nothing at all about so-called "traditional" or "non-traditional" equitable relief.

11

Thus, when the City's cases are exposed to analytical light, it becomes clear that the City has no legal support, let alone Illinois caselaw, that somehow limits the scope of the exclusion in the Starstone Policy to "traditional" equitable remedies.[3]

The City also seeks to cabin Exclusion BB to unspecified forms of "traditional" equitable relief by employing *ejusdem generis*. That doctrine is inapplicable here. The parties have stipulated that the policy is unambiguous. (ECF 77 at ¶ 37). When contract language is clear, it is "not to be overcome by resort to mechanical rules of construction, whose function is not to create doubts, but to resolve them." *Rucker v. Wabash R. Co.*, 418 F.2d 146, 150 (7th Cir. 1969) (applying this admonition to *ejusdem generis*; noting that the "the limits to the use of that doctrine" apply even where a provision is to be "narrowly construed;" and warning that *ejusdem generis* "cannot be employed to render general words meaningless.").[4]

Moreover, *ejusdem generis* applies only "where an enumeration of specific things or matters is followed in a contract by general words or phrases." 12A Ill. Law and Prac. Contracts § 143. *See also West Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, at ¶ 57 (*ejusdem generis* applies "where general words follow an enumeration of persons or things") (citations omitted). Here, the enumeration of the forms of relief excluded by the Policy does not end, for example, with the phrase "or other forms of similar relief." It concludes by identifying the **only type of relief that is covered**, i.e., "monetary damages." ECF 69-2 at Sec. V.BB.

Critically, courts interpreting functionally identical exclusions have not used *ejusdem generis* to limit their application to so-called "traditional" equitable relief. *See City of Dearborn*

---

[3] The parties do not dispute that the Policy precludes coverage for suits seeking equitable relief.

[4] The City's attempt to employ ejusdem generis is a violation of the parties' stipulation, wherein the parties agreed they would not argue that any policy language is ambiguous, and thus would not resort to any doctrines designed to resolve ambiguities. ECF 66 at 1 (the parties "agree that in connection with [the] cross-motions for summary judgment, they will not set forth or advance any argument (a) that the language of [the Policy] is ambiguous . . .").

*v. Ins. Co. of State of Pa.*, 119 Fed. App'x 710, 712 (6th Cir. 2004) (exclusion for "injunctions, equitable relief, or any other form of relief other than the payment of money damages"); *Rizzo v. Ins. Co. of State of Pa.*, 969 F. Supp. 2d 1180, 1195 (C.D. Cal. 2013) (same). Further, the Policy **repeatedly and consistently** states in numerous other places that Starstone does not pay for litigation costs. *See* Policy at Sec. I.B.1; Sec. III.C; Sec. III.E; Sec. III G.2; Sec. V.BB. Where the urged application of *ejusdem generis* is inconsistent with the contract as a whole, as would be the case here, the doctrine cannot apply. *Citizens Utilities Co. v. Illinois Commerce Commission*, 50 Ill. 2d 35, 40 (1971); *Interstate Steel Co. v. Ramm Mfg. Corp.*, 108 Ill. App. 3d 404, 407 (1982).

### C. *City of Dearborn is on All Fours.*

In contrast to the dearth of applicable law cited by the City, Starstone has provided this Court with a case analyzing a functionally identical exclusion that was applied to foreclose coverage as a matter of law for precisely the type of costs at issue here. In *City of Dearborn,* the United States Court of Appeals for the Sixth Circuit found that a policy provision excluding "injunctions, equitable relief, or any other form of relief other than the payment of money damages" unambiguously barred coverage for attorneys' fees statutorily designated as "costs," exactly the situation here. 119 Fed. App'x at 714-15. This case is directly on point.

The City nevertheless seeks to distinguish *City of Dearborn* by pointing to the fact that the plaintiff withdrew its compensatory damages claim prior to decision. But that withdrawal played no role in the Court of Appeals' decision, including its clearly-stated rationale. Indeed, the Sixth Circuit expressed the issue on appeal without any reference to the dismissal, as follows:

> The issue on appeal is whether under Michigan law, the … policy that insured the City for "any claim or suit seeking damages covered by [its] terms and conditions," covers the remedy of attorney fees . . . . The heart of the City's argument on appeal is that under this provision of the MTA, attorney fees are awarded as a measure of damages.

13

*Id.*, at 713. Moreover, nowhere in the case does the Court of Appeals mention that its application of the exclusion was dependent on whether a compensatory damage claim remained in the case. The case was affirmatively decided based on whether the attorneys' fees awarded to plaintiff were "damages" or taxable "costs." The Court specifically grounded its decision on (i) its finding that the Michigan legislature did not intend to include attorney fees as a measure of damages, but instead to "classify attorney fees as a type of cost," and (ii) its view that the applicable statute was intended to "make attorney fees recoverable as costs for violations of" Michigan law. *Id.*, at 714.

In a last-ditch effort to avoid *City of Dearborn*, the City cites *City of Sandusky, Ohio v. Coregis Ins. Co.*, 192 Fed. App'x 355 (6th Cir. 2006). Unfortunately, the City misrepresents the findings and import of this case. Despite the City's effort to "spin" the opinion, a straightforward reading reflects that the panel in *City of Sandusky* found under Ohio law **that § 1988 costs were not covered by the insurance policy at issue**. *Id.*, at 360 ("We find no specific language in the insurance contract providing that a § 1988 award under such circumstances is to be itself a claim for 'damages' covered by the contract, and we therefore hold that the contract plainly did not contemplate such coverage."); *id.*, at 361, n. 5 ("… we have determined that the class plaintiffs' request for an award under § 1988 was not a claim for "damages" or "costs" covered under the policy …."). Moreover, the panel reached this conclusion even though the policy broadly covered all "monetary sums," and excluded only "injunctive relief and declaratory judgments," *id.*, at 359, an exclusion **much narrower** than the exclusion at issue in *City of Dearborn* and the Starstone Policy. Thus, *City of Sandusky* fully supports Starstone's position, given that the

14

Starstone Policy excludes **any** form of relief "other than monetary damages," and states expressly that the City must pay all litigation "costs."[5]

## CONCLUSION

For the reasons explained above, Starstone respectfully requests that the Court grant summary judgment in favor of Starstone with respect to its Complaint and the City's remaining counterclaim.

Respectfully submitted,

STARSTONE INSURANCE SE

By its attorneys,

*/s/ William Andrichik*

William R. Andrichik (ARDC#: 6302306)
Steptoe & Johnson LLP
227 W. Monroe, Ste. 4700
Chicago, IL 60606
P: (312) 577-1273
wandrichik@steptoe.com

Harry Lee (admitted *pro hac vice)*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
P: (202) 429-8112
hlee@steptoe.com

William Carson (admitted *pro hac vice*)
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
P: (202) 429-6268
wcarson@steptoe.com

---

[5] In dicta, the *City of Sandusky* panel mused whether despite the existence of the exclusion at issue in that case, § 1988(b) costs could be covered if they were awarded in connection with a successful claim for compensatory damages, but the panel made clear that it was expressing "no opinion" on that question. *Id.*, at 360, n. 3. Critically, the panel did nothing to disturb *City of Dearborn*, which found that, in circumstances identical to those present here, § 1988(b) costs are not covered, with no distinction about the existence *vel non* of a compensatory damages claim. Regardless, the City does not argue that the Policy defines "damages" in an unusual or atypical manner that would somehow include amounts awarded as "costs." *See* ECF 74 at 2.

**<u>Certificate of Service</u>**

I hereby certify that a true and correct copy of the foregoing was filed electronically on March 14, 2022. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Paul L. Langer
John A. Aramanda
Quarles & Brady LLP
300 North LaSalle Street, Suite 4000
Chicago, Illinois 60654
(312) 715-5000 | (312) 715-5155 (fax)
paul.langer@quarles.com
john.aramanda@quarles.com

*Attorneys for The City of Chicago*

                                                 */s/ William R. Andrichik*