IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STARSTONE INSURANCE SE, | ) | |
| | ) | Case No. 20 CV 2475 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John Robert Blakey |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this insurance dispute, the parties, Plaintiff and Counterclaim-Defendant Starstone Insurance SE ("Starstone"), and Defendant and Counterclaim-Plaintiff the City of Chicago ("the City"), dispute whether Starstone must, pursuant to an insurance policy it issued, pay part of a sum the City paid to settle a civil rights action brought against it and several of its police officers. Starstone sued, seeking a declaratory judgment that it has "no obligation to fund any portion of the City's settlement," [1] at ¶ 24, and the City countersued, alleging breach of contract, [22] at ¶¶ 16–21.[1]

The case is now before the Court on the parties' cross motions for summary judgment, [67], [70]. For the reasons explained below, the Court grants the City's motion [70] and denies Starstone's motion [67].

---

[1] The City also alleged violation of § 155 of the Illinois Insurance Code, [22] at 11–14, but the Court dismissed this claim on Starstone's motion, [43], [44].

I.  **Factual Background**[2]

    A.  **The Rivera Settlement**

Jacques Rivera was convicted of murder in 1990. [22] at ¶ 6. Upon his release in 2011, Rivera sued the City and multiple Chicago police officers for civil rights violations under 42 U.S.C. § 1983 (the "Rivera Lawsuit"). *Id.* at ¶ 7; [66] at ¶ 6. After a trial, the jury in the Rivera Lawsuit returned a verdict on June 29, 2018, awarding Rivera $17,000,000 in compensatory damages against the City and its officers, and $175,000 in punitive damages against two of the officers. [66] at ¶ 8. The trial judge denied post-trial motions and entered judgment. *Id.* Thereafter, Rivera's attorneys filed a petition seeking $5,887,940 in attorneys' fees from the City for the work they performed from the commencement of the Rivera Lawsuit through the completion of trial; counsel also sought $154,376.25 in litigation costs other than attorneys' fees accrued from the commencement of the Rivera Lawsuit through November 10, 2018. *Id.* at ¶ 9. The City appealed, and the parties then engaged in mediation through the Seventh Circuit's mediation program. *Id.* at ¶¶ 8, 10.

On February 11, 2020, the City and Rivera agreed to settle the Rivera Lawsuit for $18,750,000 (the "Rivera Settlement"), which resolved the Rivera Lawsuit in full, including all fees and costs. *Id.* at ¶ 10. The City and Starstone agree that at least $3,750,000 of the $18,750,000 settlement constitutes fees and costs. [66] at ¶ 15.

---

[2] Beyond the parties' opening pleadings, [1], [22], the facts are drawn from the parties' joint statement of stipulated facts, [66] at 2–5.

### B. The Starstone Policy

Starstone issued an excess liability insurance policy to the City covering the period from December 31, 2010 to December 31, 2011 ("the Policy"). [22] at ¶ 10. As it relates to the Rivera Settlement, the Policy provides, subject to all of its terms, including conditions and exclusions, $5,000,000 in indemnification coverage excess of the City's $15,000,000 retained limit. [66] at ¶ 5. The Policy does not provide for a duty to defend, and thus the City defended the Rivera Lawsuit. *Id.* at ¶ 7. But the Policy does provide for a duty to indemnify, subject to all of its terms, including conditions and exclusions. *Id.* The City timely notified Starstone of Rivera's claim under the Policy. *Id.* Starstone did not object to the City settling for the amount of $18,750,000, but took the position that Rivera's costs, including attorney's fees, awardable pursuant to 42 U.S.C. § 1988(b), were not covered under the Policy. *Id.* at ¶ 11.

The City paid the $18,750,000 settlement amount to Rivera on May 14, 2020, and then demanded that Starstone reimburse it under the terms of the Policy for the $3,750,000 paid to Rivera in excess of the City's $15,000,000 retained limit. *Id.* at ¶¶ 12–13. Starstone denied coverage, again taking the position that Rivera's costs, including attorney's fees awarded pursuant to 42 U.S.C. § 1988(b), are not covered under the Policy. *Id.* at ¶ 14.

### C. Procedural Posture

With the parties at an impasse, Starstone sued in this court, seeking a declaratory judgment that it had "no obligation to fund any portion of the City's

3

settlement." [1] at ¶ 24. The City answered and countersued, alleging that Starstone's refusal to pay $3,750,000 towards the Rivera Settlement constituted a breach of contract. [22] at 11–12. After stipulating to the factual record, [66], the parties have now crossed moved for summary judgment, [67], [70].

The sole issue before the Court today is whether the Policy covers costs owed to Rivera under 42 U.S.C. § 1988(b) and 28 U.S.C. § 1920; if it does, then the City is entitled to summary judgment,[3] and, if it does not, then Starstone is entitled to summary judgment. [66] ¶¶ 16–17.

## II. Legal Standards

The interpretation of "an insurance contract is a legal issue that may be decided on a motion for summary judgment." *Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 327 (7th Cir. 2021) (citing *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009). Summary judgment is proper "when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Sterling Nat'l Bank v. Block*, 984 F.3d 1210, 1217 (7th Cir. 2021). Here, the parties dispute whether the Policy requires Starstone to indemnify the City for the settlement amount it paid Rivera, which unquestionably included attorneys' fees and costs. The duty to indemnify is "an insurer's duty 'to reimburse the insured for losses it incurs directly or to pay sums that the insured becomes legally obligated to pay others.'" *Shockley*, 3 F.4th at 331 (quoting *Keystone Consol. Indus., Inc. v. Emps. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006)). The duty applies "when the

---

[3] If the Court finds that the Policy covers such costs, then the parties plan to litigate whether Starstone must also pay interest and costs of suit, and, if so, the amount of any such payments. [66] ¶ 17.

4

insured's claim 'actually falls within the scope of coverage.'" *Id.* (quoting *Madison Mut. Ins. Co. v. Diamond State Ins. Co.*, 851 F.3d 749, 753 (7th Cir. 2017));[4] *see also Allied Prop. & Cas. Ins. Co. v. Metro North Condo. Ass'n*, 850 F.3d 844, 847 (7th Cir. 2017) ("Once the insured has incurred liability as a result of the underlying claim, an insurer's duty to indemnify arises only if 'the insured's activity and the resulting loss or damage *actually* fall within the . . . policy's coverage.'" (quoting *Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 492 (Ill. 2001)) (emphasis in original). This Court's inquiry thus necessarily begins with the plain language of the parties' contract.

A court's "primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy." *Great Am. Ins. Co. of New York v. Mallers Bldg., L.L.C.*, No. 19 C 3831, 2021 WL 2136803, at *1 (N.D. Ill. May 26, 2021) (citing *Valley Forge Ins. Co. v. Swiderski Elec., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1078 (Ill. 1993)). Insurance policies, like all contracts, are construed as a whole, "giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Id.* (citing *Valley Forge*, 860 N.E.2d at 314; *Central Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004)). In addition, "the court also should consider 'the type of insurance for which the parties have contracted, the risks undertaken

---

[4] The question of whether the insurer has "a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it," *Shockley*, 3 F.4th at 331 (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1221 (Ill. 1992)); here, it has.

5

and purchased, the subject matter that is insured and the purposes of the entire contract.'" *Id.* (quoting *Crum & Forster*, 620 N.E.2d at 1078).

An unambiguous insurance policy must be construed—and enforced—according to the plain and ordinary meaning of its terms. *River v. Com. Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994). Where an ambiguity exists, the court must "strictly construe" the terms "against the insurer, who drafted the policy, and liberally in favor of coverage." *Mallers Bldg.*, 2021 WL 2136803, at * 1 (quoting *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006)). But "mere disagreement" about the interpretation of a policy provision does not render the provision ambiguous. *River*, 160 F.3d at 1169 (citing *Nat'l Wrecking Co. v. St. Paul Surplus Lines Ins. Co.*, 11 F.3d 685, 687 (7th Cir.1993)). Rather, under Illinois law,[5] a provision in an insurance policy is ambiguous only when it is susceptible to more than one reasonable interpretation. *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010).

Finally, under Illinois law, the insured "bears the burden of proving that its claim falls within the insuring agreement." *Atl. Specialty Ins. Co. v. AC Chicago, LLC*, 272 F. Supp. 3d 1043, 1049 (N.D. Ill. 2017) (citing *The PrivateBank & Tr. Co. v. Progressive Cas. Ins. Co.*, 03 C 6031, 2004 WL 1144048, at *3 (N.D. Ill. May 18, 2004), *aff'd*, 409 F.3d 814 (7th Cir. 2005); *Reedy Indus., Inc. v. Hartford Ins. Co. of Ill.*, 715 N.E.2d 728, 731–32 (Ill. App. Ct. 1999)). But "insurers have the burden of proving

---

[5] The parties agree that Illinois law applies.

that an exclusion applies." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010) (citing *Ins. Corp. of Hanover v. Shelborne Assocs.*, 905 N.E.2d 976, 982 (Ill. App. Ct. 2009)).

### III. Discussion & Analysis

Here, the parties agree that the Rivera Settlement totaled $18,750,000 and that at least $3,750,000 of that constitutes 42 U.S.C. § 1988(b) and 28 U.S.C. § 1920 costs, which include Rivera's attorneys' fees. [66] at ¶ 15. The parties dispute whether the Policy obligated Starstone to pay fees and costs; to resolve the dispute, as explained above, the Court first turns to the language of the policy.[6]

As it relates to this coverage dispute, the Policy provides $5,000,000 in indemnification coverage in excess of the City's $15,000,000 retained limit. [66] at ¶ 5. Section I of the Policy specifies "WHAT WE SHALL PAY ON YOUR BEHALF" and provides, in relevant part:

A.  INSURING AGREEMENTS

   1.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY
       We shall pay you, or on your behalf, the ultimate net loss, in excess of the retained limit, that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury or property damage arising out of an occurrence during the Policy Period.

---

[6] Starstone makes much of the Court's ruling on its motion to dismiss the City's bad faith insurance claim under § 155 of the Illinois Insurance Code, which alleged that Starstone unreasonably and vexatiously refused to contribute to the Rivera Settlement. But the Court's prior ruling establishes only that the parties reasonably disputed the interpretation of the policy language, not that Starstone's interpretation carries the day. *See, e.g.,* [44] at 8 ("based upon the plain language of the policy (attached to the counterclaim) an argument in favor of such apportionment is not unreasonable (whether or not it ultimately proves successful)"). The Court thus writes today on a relatively clean slate.

7

> 2. ERRORS AND OMISSIONS LIABILITY
> We shall pay you, or on your behalf, the ultimate net loss, in excess of the retained limit, that the insured becomes legally obligated to pay to compensate others for loss arising out of your wrongful act that takes place during the Policy Period and arises solely in performing or failing to perform duties of the public entity.

[66] at 9. In the definitions section, Section II, the Policy defines "ultimate net loss" to mean "the sum actually paid or payable due to a claim or suit for which you are liable either by a settlement to which you and we agreed or a final judgment. Such sum will include proper adjustments for recoveries and salvage." [66] at 16 (Policy, Section II, ¶ EE).

Starstone argues that amounts taxed pursuant to 42 U.S.C. § 1988(b) and 28 U.S.C. § 1920 are "costs," not "damages," and the policy covers damages only, explicitly excluding coverage for any and all litigation costs. [68] at 5. But the policy does not limit coverage to "damages"; rather, the policy expressly covers the "ultimate net loss," which by its terms includes "the sum actually paid" in settlement. In its pleadings, Starstone emphasizes that the Policy's insuring agreement clearly states that Starstone will pay what "the insured becomes legally obligated to compensate others for loss arising out [the City's] wrongful act . . . ." *See* Policy § I.A.2 (emphasis added). It reads this language to mean that "the Policy provides coverage for compensation to the tort Plaintiff (Mr. Rivera), not the fees of his counsel." [74] at 3 (citing *Gen. Star. Indem. Co. v. Lake Bluff Sch. Dist. No. 65.*, 819 N.E.2d 784, 793 (Ill. App. Ct. 2004) (holding that "damages" are "compensation" for wrong[s] or injury); *In re Consol. Objections to Tax Levies of Sch. Dist. No. 205*, 739 N.E.2d 508, 513 (Ill.

2000) ("'compensatory damages' is a monetary award paid to a person as compensation for loss or injury")). But fees and costs also compensate a wronged and prevailing party and are designed to make him whole. *See e.g., Robbins v. MED-1 Sols., LLC*, 13 F.4th 652, 659 (7th Cir. 2021) (noting that an award of fees to a prevailing party makes him whole). Compensating someone for a loss goes beyond damages; if that were not the case, the phrase "compensatory damages" would be redundant.

Starstone emphasizes that other provisions of the Policy speak in terms of "damages." For example, in Section III, entitled "Limits of Insurance," the policy provides that its "Aggregate Limits" are "the most [Starstone] will pay for the total of all damages . . . for all losses arising out of all wrongful acts." [66] at 20; Policy, § III, ¶ G.2. To the extent the use of "damages" in Section III remains inconsistent with the "ultimate net loss" language in Section I (which is not necessarily so), that purported inconsistency would create an ambiguity that must be construed against Starstone and in favor of coverage. *See Berg v. New York Life Ins. Co.*, 831 F.3d 426, 429 (7th Cir. 2016) ("If a word is specifically defined in the policy, that meaning controls," and "if the policy language is 'susceptible to more than one reasonable meaning,' an ambiguity exists and it will be construed against the insurer.") (citing *Am. Nat. Fire Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 796 N.E.2d 1133, 1141 (Ill. App. Ct. 2003); *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 582 (Ill. 2005)).

In arguing that the Policy exempts it from paying costs, Starstone also cites certain provisions absolving it of any obligation "to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against [the City]." [66] at 7 (citing Policy, § I(B)). To the extent Starstone argues that fees and costs paid to Rivera constitute "defense costs," the theory fails. Policy provisions relating to defense and defense costs have no bearing on this dispute, as the City is not seeking to recover its own fees and costs, but rather the fees and costs that Rivera incurred in vindicating his rights (which were included, by agreement, in the settlement amount, the amount the City was legally obligated to pay). Additionally, to the extent Starstone argues that Section I(B)(1) uses "costs" to mean all costs and not just defense costs, the heading of that paragraph ("DEFENSE AND DEFENSE COSTS") guts that argument entirely.

Starstone also argues that, even if costs owed under § 1988(b) and § 1920 fell within the Policy's coverage grant, other language in the Policy purportedly removes such costs from coverage. Here, Starstone cites a paragraph in Section V, the Exclusions section, which states that the insurer "will not defend or pay under this Policy for claims or suits against you" "for injunctions, equitable relief, or any other form of relief other than monetary damages." [66] at 27 (quoting Policy, § V(BB)). But the Rivera Lawsuit *was* a suit for monetary damages, so this exclusion does not apply. And, under Illinois law, exclusions "are read narrowly and apply only if their application is clear and free from doubt." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303 (7th Cir. 2021). Starstone has not explained why this

10

exclusion would affect its obligation to pay part of the ultimate net loss incurred in the Rivera Lawsuit, which was a suit for money damages, that wound up including a monetary award of fees and costs. Again, to the extent this exclusion contradicts the E&O language quoted above (and it does not appear to do so), the contradiction would only create an ambiguity that must be construed against Starstone.

Finally, the Court turns to Starstone's motion to strike or, in the alternative to file a sur-reply, [80]. Starstone asks the Court to strike a portion of the City's reply brief that, in Starstone's view, raises an argument for the first time. Although the Court disagrees and denies Starstone's motion to strike, in the interest of completeness, the Court has considered Starstone's proposed sur-reply in resolving the cross motions. The sur-reply, however, does not help Starstone. Indeed, Starstone's sur-reply misses the point: Starstone argues that "even if § 1988 costs are technically awarded to successful civil rights plaintiffs, those costs are not awarded as compensation *for loss*, i.e., they are not 'damages.'" [80-1] at 1 (emphasis supplied). But, as explained above, the Policy obligates Starstone to pay the "ultimate net loss"—that is, the sum actually paid in settlement—"in excess of the retained limit." [66] at 9, 16. Nothing in the plain language of the policy limits the "ultimate net loss" to damages.[7]

## IV. Conclusion

For the reasons explained above, this Court finds that the Policy covers the portion of the Rivera Settlement in excess of the City's self-insured retention and that

---

[7] Attorney's fees belong to the plaintiff, not the attorney, *e.g., Astrue v. Ratliff*, 560 U.S. 586, 594 (2010), and are designed to make the plaintiff whole for wrongs suffered, *i.e., for loss*.

11

Starstone must reimburse the City for the $3,750,000 it paid in excess of its retention to settle the Rivera Lawsuit. This is so even if such amounts constitute Rivera's fees and costs. The Court thus grants the City's motion for summary judgment on this issue [70] and denies Starstone's motion [67].

The parties shall meet and confer concerning interest and costs and, by October 20, 2022, file a joint status report proposing next steps to resolve any disputes relating to these issues.

Dated: September 26, 2022             Entered:

                                      _____
                                      John Robert Blakey
                                      United States District Judge